[L. A. No. 7919. In Bank.—September 28, 1925.]

ISADORE COHEN et al., Respondents, v. ALICE C. MAR-SHALL et al., Appellants.

ISADORE COHEN et al., Respondents, v. PERCY W. MARSHALL et al., Appellants.

[1] MORTGAGES—FORECLOSURE—DESTRUCTION OF SECURITY—PERSONAL ACTION.—Notwithstanding the provision of section 726 of the Code of Civil Procedure that "There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter," in case of a failure or destruction of the security, without the fault of the mortgagee, the mortgagee will not be restricted to a procedure which manifestly must prove to be vain and idle, but he may maintain a personal action against the mortgagor.

[2] ID.—ENTIRE DESTRUCTION OF MORTGAGED CROP—EVIDENCE—FINDINGS.—In this personal action to recover the amount of certain advances made for use in the planting and cultivation of a crop of peas on certain lands, the amount of which advances were secured by a mortgage upon said crop, although there was some evidence offered by defendants which tended to show that, notwithstanding the excessive and protracted rainfall and the presence of aphis, a part of the crop could have been saved or salvaged had plaintiffs

made further advances requested by defendants, the trial court was justified in finding that said crop was entirely destroyed by rain and aphis without any act of the plaintiffs or the person (plaintiffs' assignor) to whom the security was given.

[3] ID.—CROPS MORTGAGED — TIME — CONSTRUCTION OF AGREEMENT.— Where said crop mortgage was confined to the "crop or crops now being, standing and growing and to be grown up to the season of 1923," only crops that could reasonably be expected to mature and be ready to be gathered before January, 1923, were intended to be, or were, as a matter of fact, subject to the mortgage lien; and said mortgage did not cover crops planted in December, 1922, and which could not mature until several months after the beginning of 1923.

[4] ID. — CONTENTS OF MORTGAGE — ALTERATION AFTER EXECUTION — AMENDMENT OF ANSWER—DISCRETION.—In this personal action to recover the amount of certain advances made for use in the planting and cultivation of a crop of peas on certain lands, after said crop had been entirely destroyed by rain and aphis, the trial court did not abuse its discretion by refusing leave to defendants to amend their answers during the trial of the cause by setting up specific denials to the effect that the crop mortgage securing said advances, when signed by them, did not contain the clause and provision that if, at any time, the mortgagee should deem the security insufficient to secure the moneys advanced by it, said mortgagee reserved the right at its option to declare the whole of said advancements immediately due and payable and would be entitled to a judgment against the mortgagors for any deficiency which might be shown to exist, where such motion to amend was made many months after the signing of said contract, and the challenged clause not only appeared in the mortgage so pleaded by plaintiff as an exhibit, but was specifically set out and stressed in the body of the complaint, and was also pleaded by defendants in precisely the same language as it appeared in the original recorded instrument and in the complaint.

(1) 11 C. J., p. 746, n. 14, 16, 16 New, 20 New.    (2) 11 C. J., p. 746, n. 30 New.    (3) 11 C. J., p. 506, n. 98 New.    (4) 4 C. J., p. 800, n. 40.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

Turner & Grainger and Richard A. Turner for Appellants. Shapiro & Shapiro for Respondents.

3. See 5 Cal. Jur. 54.

SEAWELL, J.—By agreement the above-entitled causes were tried as one cause, it being stipulated by counsel in said causes that whatever evidence should be produced therein might be considered and applied by the trial court with reference to the cause in or to which it should properly appear to be material or relevant.

The vital question presented by this appeal is whether the finding of the court to the effect that the security of the mortgagee, consisting of a crop of peas and such other crops as might be grown on certain described premises, had been destroyed without the fault of the mortgagee, thereby giving said mortgagee the right to maintain a simple action against the makers of the note, is supported by the evidence.

Defendants and appellants, husband and wife, owned an interest in several parcels of land situate in Oceanside and Carlsbad districts, respectively, county of San Diego. Said lands were adaptable to the raising of early peas for the market. Appellants were in need of financial assistance to enable them to plant said lands to peas and market the crop. Cohen, Mann & Kahn, Incorporated, with its place of business at the city of Los Angeles, was engaged in handling, buying, selling, and distributing fresh and green fruits, and vegetables. On May 19, 1921, appellants entered into a contract with said corporation whereby it was appointed the sole and exclusive agent of appellants for selling and distributing all peas grown by them for the seasons 1921 and 1922. Said corporation was to do all things necessary to consummate said sales of peas in the market and said appellants were to cultivate and raise the crops. Appellants specifically covenanted to plant to peas 100 acres known as the Russ property, situate at Oceanside. Said corporation was to receive fifteen per cent as commissions on all gross sales delivered to said agent for shipment and distribution. A pooling plan was also a part of the agreement. Said corporation agreed to advance to appellants, as a loan, $30 per acre for each acre planted to peas. One thousand dollars was to be paid upon signing the agreement, $1,000 at the time the acreage was ready to be planted and the remaining $1,000—making $3,000 in all—at the time the acreage showed an eighty per cent stand. All advances, such as crating charges, acreage advancements, commissions, and other speci-

fied charges were to have priority over all other charges or expenses. The corporation guaranteed six cents per pound for all peas received and accepted by it until March, 1922.

On August 29, 1921, a larger sum had been advanced by said corporation than it had agreed to advance. It was thereupon agreed between said parties that a much larger acreage than that originally agreed .upon should be planted to peas. The enlarged and revised plan brought into the transaction a $12,000 promissory note executed by appellants in favor of said corporation to secure past, present, and future advancements made and to be made by said corporation to appellants, the payment of which note was secured by a mortgage on the crops.

Said agreement of August 19, 1921, by which an increased area was to be planted to peas and the need of increased financial assistance was provided for, was but an amplification of the purposes of the parties expressed in the agreement of May 19, 1921. On the day of the execution of the agreement dated August 19, 1921, Mr. and Mrs. Marshall, appellants, executed a promissory note, by the terms of which they jointly and severally agreed to pay to the order of Cohen, Mann & Kahn on or after two years from the date thereof the sum of $12,000. It contained the usual provisional clause for attorney's fees. The crop mortgage agreement provided that the payment of the note was secured thereby. It assigned to said corporation, in the language of the instrument, the following crops: "The crops of peas, barley, and in fact every kind and nature of crop or crops now being, standing, and growing and to be grown *up to the 1923 season* upon that certain piece or parcel of land, . . . " etc. (Italics supplied.) The acreage was described as follows: 120 acres known as the Russ land; 80 acres known as the Cary tract; 25 acres known as the Miels add. The mortgage agreement contained the following provision: "If at any time the mortgagee deems the security herein insufficient to secure the payment of the moneys advanced herein, then mortgagee may at its option declare the whole of said advances immediately due and payable, and shall be entitled to a judgment against the mortgagors for any deficiency which may arise."

Appellants being unable to obtain credit for fertilizing material necessary to the production of said crop of peas,

Cohen, Mann & Kahn obtained for them a credit with the Pacific Growers' Exchange whereby they were enabled to purchase said material at a cost of $5,070. As a guarantee of the payment of a portion of said debt, Cohen, Mann & Kahn assigned to the Pacific Growers' Exchange an interest in and to said crop contract and indorsed the promissory note of appellant executed to said Pacific Growers' Exchange in the sum of $5,070 with liability limited to three-quarters of the amount of said indebtedness, to wit, $3,802.50. It was further agreed between Cohen, Mann & Kahn and Pacific Growers' Exchange that if the proceeds from the first crop of peas were not sufficient to reimburse the former for all moneys advanced to appellants that the note which they had guaranteed should be extended by Pacific Growers' Exchange for a period of six months and, if necessary, for successive periods of six months until the expiration of the term of the mortgage.

On November 26, 1921, Cohen & Rabin, with the written consent of appellants, and a number of other growers, became the successor of Cohen, Mann & Kahn in all contracts and agreements made by said appellants and said other growers with Cohen, Mann & Kahn, and all right, title and interest therein was transferred to respondents. We think there is no doubt as to the sufficiency of the considerations that induced the parties to execute the several instruments upon which the action is based.

The complaints were filed January 25, 1922, and attachments were issued thereon and levied upon appellants' property. The causes of action came on for trial April 20, 1923. Judgment went for plaintiffs (respondents) in both cases. In the first for the sum of $7,585.31 and in the second action for the sum of $3,824.33, aggregating $11,409.64, including interest. The claim of $3,802.50, on account of respondents' guarantee for the payment of the Pacific Growers' Exchange note, was not allowed by the court because it had not been paid by respondents. In each action plaintiffs were allowed attorney's fees in the sum of $250, and that amount was included in each of said judgments.

A number of specifications as to the insufficiency of the evidence to support the findings are made. The failure of the court to find on material issues raised by the answers is also assigned as reversible error. The numerous specifica-

tions of error may be reduced to a few important questions which will later be noticed.

It is true that crops other than the pea crop were mentioned in the second agreement of the parties as furnishing a part of the security, but there is not the slightest doubt that the parties regarded the pea crop as furnishing the security for said advancements, as it was the central and primary object in the minds of all the parties to the contract. The first agreement specified the exact acreage and the particular lands that were to be planted to peas, and no other kinds of crops were mentioned. While the second agreement mentioned barley and such other crops as might be grown, the evidence shows conclusively that the advancements were made for the planting and cultivation of peas. Much of the moneys expended were expended in leveling, checking, and putting the ground in the condition required for the cultivation of peas.

After the execution and delivery of said note in the sum of $12,000 it continued to be the practice of the parties herein, following the practice that had obtained before its execution, to evidence such advancements made by respondents to appellants by the execution of a promissory note by the latter, bearing the date, amount, and rate of interest of each advancement as and when made. The effect of this is that the aggregate amount of indebtedness, with a few exceptions, is shown by a number of separate promissory notes. This, it is contended, was done for convenience and to avoid subsequent disputes as to the amounts advanced.

[1] The complaints allege the destruction of the security by protracted and excessive rains and by aphis pest, without any fault of respondents. This allegation was denied by appellants, and it was contended below, and urged here, that if it be granted that the pea crop was destroyed there may have been, and as a fact there were, other crops actually planted on the parcels of land described in the mortgage contract before the expiration of 1922, which crops constituted partial, if not full, security for all advancements made, and, therefore, said actions not having been brought to foreclose the mortgage in compliance with the provisions of section 726 of the Code of Civil Procedure, the right to maintain a personal action against the makers of said note was lost. So much of section 726 of the Code of Civil Procedure, as

is applicable here, provides: "There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter." It is the settled law, however, that in case of a failure or destruction of the security, without the fault of the mortgagee, the mortgagee will not be restricted to a procedure which manifestly must prove to be vain and idle. (Sec. 3532, Civ. Code; *Republic Truck Sales Co.* v. *Peak,* 194 Cal. 515 [229 Pac. 331]; *Toby* v. *Oregon Pacific R. R. Co.,* 98 Cal. 490 [33 Pac. 550]; *Otto* v. *Long,* 127 Cal. 471 [59 Pac. 895]; *Savings Bank* v. *Central Market,* 122 Cal. 28 [54 Pac. 273]; *Martin* v. *Becker,* 169 Cal. 301 [Ann. Cas. 1916D, 171, 146 Pac. 665]; 18 Cal. Jur., sec. 533, p. 249.)

[2] The sufficiency of the evidence to support the finding that "all of the said crop described in said mortgage was entirely destroyed by rain and aphis without any act of the plaintiffs or the person to whom the security was given" is not open to serious question. The pea season in the Oceanside and Carlsbad districts begins about the middle of November of each year and concludes the following spring. Shipments began in the year 1921, on the twenty-ninth day of November, and were discontinued January 10, 1922. During the latter part of December, 1921, and the forepart of January, 1922, the rainfall in the districts in which the crops were growing was excessive and protracted. By the middle of January, as described by two or three witnesses called by respondents, the vines had fallen to the ground, the roots were water-soaked and injured, the blossoms had dropped from the vines and the fields were literally alive with a pest known as aphis and covered with the honey that said pest spreads. The vines had the appearance of being dead or in a dying condition and the entire crop was absolutely unmarketable. Some evidence was offered by appellants which tended to show that a part of the crop could have been saved or salvaged had respondents advanced the sum of $600, which request was made of it by appellants but respondents refused to grant it. This issue, however, was found against the appellants by the trial court. Another contention made by appellants is that on the day the suits were filed there was growing upon said premises a crop of barley consisting of about fifteen acres. Respondents and

the witnesses called by them testified that they had made repeated visits to said premises and had thoroughly inspected the same and there were no other crops growing thereon except a small truck garden and a few tomato vines that were of no consequence. The fifteen acres above mentioned were "undeveloped land," and the value of said barley crop above the cost of harvesting, if anything, was not stated. It was probably inconsequential. But, however this may be, it would seem that appellants received the benefit of the crop.

[3] We think there is no merit in the position taken by appellants that certain crops of barley or oats sown in December, 1922, were a part of the mortgaged property. These crops, or other crops so planted would not mature until several months after the beginning of 1923, and were not included in the agreements of the parties as part of the mortgage security. This is made clear by an inspection of the contracts and an examination of the evidence. No lien upon those crops was within the contemplation of the contracting parties. The mortgage is confined to the "crop or crops now being, standing and growing and to be grown up to the season 1923." Of course, crops planted in December, 1922, would not mature by January 1, 1923. Only crops that could reasonably be expected to mature and be ready to be gathered before January, 1923, were intended to be, or were, as a matter of fact, subject to the mortgage lien.

The rule of law announced in *Arques* v. *Wasson,* 51 Cal. 620 [21 Am. Rep. 718], and other cases, as to the potential existence of crops not sown at the time a mortgage is given upon them, has no application to the issue involved here. We recognize the rule of law as there stated. The contract in the instant case, considered with reference to the evidence, shows that the case is entirely without the rule announced in *Arques* v. *Wasson, supra.* There is also evidence in the instant case to the effect that appellant Percy W. Marshall declared, early in January, 1922, that he would not sow or plant any other or further crops.

[4] Clearly the trial court did not abuse its discretion by refusing leave to appellants to amend their answers during the trial of the cause by setting up specific denials to the effect that the mortgage when signed by them did not contain the clause and provision that if, at any time, the

mortgagee should deem the security insufficient to secure the moneys advanced by it, said mortgagee reserved the right at its option to declare the whole of said advancements immediately due and payable and would be entitled to a judgment against the mortgagors for any deficiency which might be shown to exist. At the time the request to amend was made it was contended that said clause had been surreptitiously inserted in the mortgage contract after it had been executed and before it was offered for record. This motion was made months after the signing of said contract. The clause now challenged as not having been a provision of the contract as signed not only appeared in the mortgage as pleaded by respondents as an exhibit, but it was also specifically set out and stressed in the body of the complaint. Moreover, it was also pleaded by appellants in their answers by way of an exhibit in precisely the same language as it appears in the original instrument and in said complaints. The fact that said clause had been typed into the mortgage by way of interlineation by the use of a typewriting machine of different pattern than the one that had been used in preparing the body of the mortgage was not such a circumstance as to arouse the suspicions of the trial court in the face of the fact that other interlineations, corrections, and insertions which were not questioned had been similarly made, apparently by the use of the same typewriting machine. The circumstances attending this particular point are such that it must be conclusively presumed that appellants had knowledge of the contents of the pleadings, especially of their own. The court committed no abuse of discretion by its ruling.

Every defense that appellants urge before this court was made an issue at the trial and a finding was thereupon made in the court below. Appellants were denied no right that they would have been entitled to had the action been one in form to foreclose the mortgage rather than a simple action on the note. The allegations of fraud and bad faith on the part of respondents and the alleged damages flowing therefrom were fully presented and determined, as were all disputed questions arising out of said controversy. To reverse the cases under such circumstances, in the absence of a showing of resultant injury, would be sacrificing the substance of the actions to an empty form of law.

The evidence being sufficient to sustain the findings of the trial court the judgment in each case is affirmed.

Richards, J., Shenk, J., Waste, J., Lawlor, Acting C. J., Lennon, J., and Houser, J., *pro tem.,* concurred.