[No. H000602. Sixth Dist. Feb. 6, 1987.]

PACIFIC VALLEY BANK, Plaintiff and Respondent, v.
ROBERT W. SCHWENKE et al., Defendant and Appellants.

†Assigned by the Chairperson of the Judicial Council.

**COUNSEL**

Robert J. Williams and Helen E. Williams for Defendants and Appellants.

Stanley W. W. Kesselman, Leland A. Wahl and Frandzel & Share for Plaintiff and Respondent.

---

OPINION

BRAUER, J.—This appeal presents a novel question in the field of mortgage and trust deed law: Is the co-maker of a promissory note entitled to enforce the provisions of Code of Civil Procedure section 726 (the so-called "one-action rule") even though he is not a party to the deed of trust securing the debt? We decide that he is so entitled.

### STATEMENT OF FACTS

There is no dispute about the facts which follow. Robert Schwenke and Terry O'Brien were partners in a business known as S. & O.B. Enterprises which engaged in property development. On April 15, 1981, Robert and Ute Schwenke (Schwenke) and Terry and Esther O'Brien (O'Brien)[1] signed a promissory note evidencing a debt in the amount of $59,000 to Pacific Valley Bank (Bank), bearing a due date of October 12, 1981. The funds received were deposited in the S & O.B. account for use in the partnership's business. The note stated that it was secured by deeds of trust on property located at 6709 Leatherwood Court and 4009 Goldrun Court, San Jose. These properties were both owned by O'Brien.

The note also stated that it was a renewal and an extension of a note originally dated January 10, 1980, secured by the same deeds of trust. In fact the earlier note, in the amount of $74,000, had been secured by O'Brien's two properties and also by a third property owned by Schwenke, located at 969 Tybalt Drive, San Jose. On April 8, 1981, shortly before the renewal date, Schwenke had paid to Bank the sum of $20,442.31, representing principal and accrued interest sufficient to reduce the obligation on the promissory note to $59,000. Bank in turn had caused the deed of trust on Schwenke's property to be reconveyed. When Schwenke and O'Brien renewed their promissory note on April 15, 1981, both were aware that it was secured by O'Brien's properties only.

On the same date, April 15, 1981, Bank extended unsecured credit to O'Brien, evidenced by a promissory note in the amount of $40,000 signed by O'Brien alone, due on May 15, 1981. The purpose of this loan was to

---

[1]For the sake of clarity we will be referring to the Schwenkes and the O'Briens in the singular and by use of the masculine pronoun.

facilitate O'Brien's purchase of real property in another county. The loan proceeds, although deposited in the S. & O.B. account, were used by O'Brien for this purpose.

Later in 1981 O'Brien made arrangements with another lender to refinance the two properties which secured the $59,000 note. The refinance transactions were accomplished through escrows with Santa Clara County Title Company (Title Co). On or about January 13, 1982, Bank made demand on Title Co for payment of $34,000, upon receipt of which amount Bank's trustee delivered to Title Co a deed of reconveyance releasing the deed of trust on the Goldrun property. The reconveyance was recorded January 15, 1982.

On or about March 10, 1982, Bank submitted a second demand to Title Co in the amount of $40,000, plus interest and fees, for the release of the deed of trust on the Leatherwood Court property. Funds were duly forwarded to Bank by Title Co, whereupon Bank's trustee delivered its reconveyance, recorded March 20, 1982.

The two payments received by Bank through the O'Brien escrows were applied as follows: Of the first payment of $34,000, $6,989.44 was used to pay interest to date on O'Brien's $40,000 unsecured note and $27,010.56 was applied to the principal balance of this note, reducing it to $12,989.44. The second payment from Title Co was $40,531.31. From this amount the remaining principal balance of the unsecured O'Brien note was paid, plus $416.29 in accumulated interest, $18,000 was placed by Bank into a "pooled account," and the balance, $9,125.58, was paid over to O'Brien. In July of 1982, an additional $6,000 was paid out to O'Brien. On October 1, 1982, the account was closed out when Bank applied the remaining $13,054.17 towards interest on the O'Brien/Schwenke $59,000 note, paying interest on that note to April 7, 1982. The two payments received by Bank, totalling $74,531.31, would have been more than adequate to pay the entire principal, plus accrued interest, on the O'Brien/Schwenke note had they been so applied when received by Bank.

Bank did not notify Schwenke of the money received through the O'Brien escrows, or of the reconveyances of the two deeds of trust. Schwenke testified that he first learned of these transactions when Bank filed suit against him and O'Brien to collect on the promissory note.

STATEMENT OF THE CASE

Bank's first amended complaint for money due on the promissory note alleged that the security had been released by agreement between O'Brien

and Bank, for valuable consideration.[2] Schwenke's demurrer raised Code of Civil Procedure section 726 as a bar to the action, claiming that Bank was obliged to resort to the security to satisfy the debt before proceeding against him personally.[3] The demurrer was overruled and Schwenke answered, raising section 726 again as an affirmative defense. Schwenke also cross-complained against Bank, alleging a breach of the covenant of good faith and fair dealing.

Schwenke next filed a motion for summary judgment on the ground that section 726 was an absolute bar to an action by Bank on the promissory note. The court hearing this motion found triable issues of fact to be: 1) whether Schwenke had knowledge of or benefitted from the separate $40,000 loan made to O'Brien; and 2) whether Schwenke had knowledge of the reconveyance transactions. In addition the order denying the summary judgment motion reflected the court's conclusion that section 726 was not a bar since the reconveyances were not an "action" within the meaning of the statute.

At trial the two disputed issues were resolved in the negative. The court made a further finding, however, that Schwenke and O'Brien had made an oral agreement whereby Schwenke would be responsible for the $59,000 partnership debt. At the close of trial the court issued its tentative decision from the bench. We summarize the pertinent holdings as follows:

1) Even though Schwenke did not expressly consent to the reconveyances, this had no legal effect as to Bank's right to pursue him on the promissory note;

2) There was no implied covenant or other understanding between the parties which required Bank to apply the proceeds of the O'Brien escrows to the O'Brien/Schwenke note;

3) In any case, Schwenke had no right to rely upon Bank applying the escrow funds to his note since he had promised O'Brien he would assume responsibility for the entire debt; and

---

[2]Bank's original complaint had apparently alleged simply that the security had been reconveyed and the note was therefore unsecured. Schwenke's demurrer to this complaint per Code of Civil Procedure section 726 (see fn. 3, *post*) was sustained and Bank subsequently amended to allege that the reconveyance was accomplished by agreement.

[3]This "one-action rule," also known as the "security first rule" begins: "[t]here can be but · one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property, which action must be in accordance with the provisions of this chapter. . . ." There follows a description of the details of the judicial foreclosure process. (Code Civ. Proc., § 726, subd. (a).)

4) The court was bound by the "law of the case," that the one-action rule of section 726 was not a bar since the reconveyances did not constitute an "action."

A written statement of decision, filed February 13, 1985, confirmed these points. Judgment was rendered against Schwenke for the entire amount of principal and interest on the note, plus costs and attorney's fees, all totalling over $100,000.[4] He was awarded nothing on his cross-complaint. As we discuss below, Schwenke's appeal from this judgment is well-taken.

## DISCUSSION

■ The law of this state is that "[t]here can be but one form of action for the recovery of any debt . . . secured by mortgage upon real property . . ."; that form of action is foreclosure of the security. (Code Civ. Proc., § 726.) If the beneficiary seeks a deficiency judgment in excess of the value of the security, he is further limited to a foreclosure by judicial process rather than by operation of the power of sale under the deed of trust. (Code Civ. Proc., § 580b.) The existence of the security thus denies the secured creditor the right to bring an independent cause of action on the underlying promissory note. (*Bank of Italy, etc. Assn.* v. *Bentley* (1933) 217 Cal. 644, 648 [20 P.2d 940].) "The code provides, in effect, that *whenever* a mortgage is given to secure a debt there can be but one action for its recovery or enforcement. After it is given, the law steps in and limits the action to foreclosure proceedings to enforce the debt." (*Western Fuel Co.* v. *S. G. Lewald Co.* (1922) 190 Cal. 25, 27 [210 P. 419].) As a corollary principle, the debtor, by signing a note secured by a deed of trust, does not make an absolute promise to pay the entire obligation, but rather makes only a conditional promise to pay any deficiency that remains if a judicial sale of the encumbered property does not satisfy the debt. (*Cooper* v. *Burch* (1906) 3 Cal.App. 470, 471 [86 P. 719].)

■ Although an exception to the one-action rule has developed in cases where foreclosure would be an idle act because the security has been destroyed or has become worthless (*Cohen* v. *Marshall* (1925) 197 Cal. 117 [239 P. 1050]; Code Civ. Proc., § 483.010, formerly § 537.1), the exception does not apply if the beneficiary himself is responsible for the loss of security. Thus a creditor is not allowed to circumvent the statute by divesting himself of his security without the consent of the debtor. (*Cooper* v. *Burch, supra,* 3 Cal.App. 470.) If he does so he has waived his right to proceed on the note. "[W]hen the mortgagee, by his own act or neglect, deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the

---

[4] A separate default judgment had been entered against O'Brien.

right to an action upon the note." (*Hibernia S. & L. Soc.* v. *Thornton* (1895) 109 Cal. 427, 429 [42 P. 447].)

■ Applying these rules of law to the facts at hand we find the conclusion inescapable that the one-action rule of section 726 is a complete bar to Bank's action against Schwenke on the promissory note.

The thrust of Bank's argument is that Schwenke's consent to the reconveyance was not necessary since Schwenke was not a trustor on the deed of trust. ■ This ignores the fact that the note and deed of trust together form one loan contract, each referring to the other on its face. (See, e.g. *Beal* v. *Stevens* (1887) 72 Cal. 451, 455 [14 P. 186].) ■ By choosing this form of debt instrument, Bank placed itself within the ambit of the rules applying to notes secured by deeds of trust in California, and thereby limited itself to the collection procedures prescribed by law. Bank must be held to have taken the deed of trust with knowledge of the rights and limitations imposed by section 726. (*Commercial Bank* v. *Kershner* (1898) 120 Cal. 495, 498 [52 P. 848].) Similarly, Schwenke, by signing a promissory note which is secured by a deed of trust, was entitled to rely upon the law governing such instruments, which limits the extent of his personal liability to a deficiency judgment in excess of the value of the security.

Emphasis on whether Bank's collection from O'Brien amounted to an "action" or not is, we think, misplaced. The confusion appears to stem in part from reliance by both parties on the recent case of *Bank of America* v. *Daily* (1984) 152 Cal.App.3d 767 [199 Cal.Rptr. 557]. Unlike our case, *Bank of America* involved the straightforward application of section 726 as a bar where the creditor tried to collect on the note while the security was still in place. In that case, Bank of America helped itself to money from the debtor's bank account to pay accrued interest on a promissory note and then attempted to foreclose the deed of trust. The *Bank of America* court found that the setoff against the debtor's account constituted an impermissible "action" to collect on a secured debt without first resorting to the security. By proceeding in violation of section 726, Bank of America was found to have waived its right of foreclosure.

■ Schwenke argues by analogy that Bank's transactions with O'Brien likewise constituted an "action" resulting in a waiver of Bank's right to proceed on the promissory note. Bank on the other hand takes the position that its deal with O'Brien was not an "action" under *Bank of America* since it was accomplished by agreement with its trustor; therefore its one and only "action" was to proceed against the (now unsecured) note.

We adopt a combination of these two analyses. We would agree with Bank that an arrangement between a trustor and his beneficiary whereby the bene-

ficiary relinquishes the security without retiring the note, while unusual, does not violate the statute. Since the provisions of section 726 are designed for the protection of the debtor, he is entitled to waive them. (*Salter* v. *Ulrich* (1943) 22 Cal.2d 263, 266 [138 P.2d 7, 146 A.L.R. 1344]; Civ. Code, § 3513.) Thus as between Bank and O'Brien, there is no bar to Bank's action against O'Brien on the note. (*Beal* v. *Stevens, supra,* 72 Cal. 451.)

With respect to Bank's rights against Schwenke, however, we part company with the lower court. Schwenke was not notified of, and did not consent to, the reconveyances of the deeds of trust securing the promissory note. Therefore, as to Schwenke, Bank's dealings with O'Brien amounted to a unilateral divestment of security in contravention of the protections provided in section 726. (*Western Fuel Co* v. *S. G. Lewald Co., supra,* 190 Cal. 25.) Bank's release of the security needn't be characterized as an "action." What is critical is that it was done without Schwenke's knowledge or consent.

This interpretation is supported by a long line of case authority.

In the case of *Cooper* v. *Burch, supra,* 3 Cal.App. 470, three partners had signed a promissory note and executed a mortgage to Cooper. By agreement between Cooper and two of the partners, Cooper executed partial releases of the mortgage as portions of the property were sold. Under this agreement the money given in consideration for the releases was not applied to pay off the note, although the amounts received were sufficient to satisfy the entire obligation. The third debtor and mortgagor, Patton, had no knowledge of the releases of the security or the disposition of funds. Cooper sued on the note and took judgment by default against the two partners but was nonsuited as to Patton. The Court of Appeal affirmed the nonsuit, holding that the release of the mortgage without Patton's knowledge or consent relieved him of liability on the promissory note.

Bank argues that *Cooper* is not applicable since defendant Patton had signed the mortgage as well as the promissory note. ■ As we discuss above, we do not think this distinction makes a difference, since the one-action rule plainly applies to all notes secured by deeds of trust in California, without regard to whether the mortgagor and the debtor are one and the same. This point is illustrated in the following case.

In *Gnarini* v. *Swiss American Bank* (1912) 162 Cal. 181 [121 P. 726], one of three partners, Cain, executed a mortgage in favor of Bank to secure a personal loan and "all other and further advances made or which may in the future be made" by Bank to the partnership. Thereafter Bank loaned money to the partnership and took a promissory note signed by all three part-

ners. At this point, the factual picture is almost identical to the case at bar. Bank held a note signed by three parties, secured by a mortgage executed by one of them. When the partnership, which had subsequently incorporated, defaulted on its note, Bank proceeded to collect on the note from monies on deposit in the corporate account. This was challenged by the trustee in bankruptcy for the bankrupt corporation, who raised section 726, claiming that Bank was required to proceed against Cain's security to satisfy the obligation. The court agreed that section 726 applied even though the debtor and mortgagor were different parties: " 'This is the doctrine, too, where the mortgage was not given by the debtor himself but by a third party [citation omitted]. In either case the debt is secured by mortgage, and· as only one action may be maintained to enforce a debt thus secured, (Code Civ. Proc., sec. 726), it follows that the mortgage security must be exhausted before recourse can be had to the bank account or personal responsibility of the debtor. Nor can the mortgage be waived, and an action brought on the indebtedness [citation omitted]. . . .' " (*Id.* at p. 184.)

The case of *Crisman* v. *Lanterman* (1906) 149 Cal. 647 [87 P. 89] also supports our holding today. In that case, Amoretta Lanterman executed a promissory note for $5,000 and gave a mortgage on land owned by her son Roy. Subsequently the same creditor, Crisman, made three additional unsecured loans to the Lanterman family. Eventually Roy executed a deed of trust on the land securing all four notes. In a foreclosure of the deed of trust, the latter three notes were paid, but not the $5,000 note. Another party took title to the property, in the course of which the original mortgage given by Amoretta was released without the consent of her survivor. When Crisman then proceeded against Amoretta's estate to collect on the note, her administrator raised the defense that the mortgage had been released. The court agreed with defendant, finding that the release of security by the voluntary act of the mortgagee, and without Amoretta's consent, relieved her estate of any personal liability for the debt. (*Id.* at p. 656.)[5]

Cases relied upon by Bank do not, we think, support a different conclusion. For example, the case of *Beal* v. *Stevens, supra,* 72 Cal. 451 involved multiple promissory notes secured by one mortgage. Upon payment of one of the notes the mortgage was retired, whereupon the mortgagee sought a money

---

[5]In so holding the Supreme Court noted that the result would be exactly the same whether Amoretta was found to be a principal debtor or a surety. As a surety Lanterman would have been released by the operation of Civil Code section 2819: "A surety is exonerated . . . if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." Since Schwenke in our case is clearly a principal debtor, and since we rest our holding squarely on the application of section 726, we do not consider it necessary to respond to those portions of the parties' arguments which analogize Schwenke's position to that of surety or third party tortfeasor.

judgment against the debtors on the other notes. The court held that the release of the lien did not prevent the creditor from suing on the underlying obligations. All obligors in *Beal,* however, had consented to the release of the mortgage, and the funds thereby received were applied to reduce the debt. The *Beal* case, therefore, does nothing to aid Bank's cause.

Bank raises several points in its argument which, while muddying the waters considerably, do not in our view alter the basic rights of the parties. Bank argues that Schwenke received the benefit of the $40,000 loan since the proceeds were deposited into the S. & O.B. partnership account. When Bank applied the funds from the O'Brien escrows, Bank was under the impression that O'Brien had sold his interest in the partnership to Schwenke. Therefore, the argument runs, Bank was entitled to conclude that Schwenke had assumed full responsibility for the $59,000 obligation, and possibly the $40,000 debt as well. It was thus justified in applying funds from the O'Brien escrows as it did. Furthermore, Bank claims that any preference shown to O'Brien, for example the $15,000 cash paid to him out of the transaction, was more than offset by the earlier release of Schwenke's security upon payment of a fraction of its value.

Taking this last point first, Bank offered no authority to support this argument and it is quite clearly without merit. Amounts paid in exchange for reconveying the Schwenke deed of trust were acceptable to Bank at the time, even though, as it now asserts, considerably more equity was available. The money received by Bank in that instance was all applied to reduce the principal balance and accrued interest on the note. And finally, O'Brien renewed the note with full knowledge of, and consent to, the above transaction. Thus it can hardly justify Bank's later bestowal of favors upon O'Brien at the expense of, and unbeknownst to, his codebtor.

Bank's characterization of the $40,000 as a loan to the partnership is contrary to the evidence. According to Joseph Arrigo, Bank's loan officer, $40,000 unsecured credit was extended to O'Brien at O'Brien's request, for the stated purpose of assisting his purchase of property in Santa Cruz county. Schwenke's name did not "come up" and was, of course, not on the note. When O'Brien defaulted, Bank sought payment from O'Brien only and never approached Schwenke for payment. O'Brien testified that he and his wife purchased a condo in Santa Cruz with the $40,000. Schwenke testified that he was not in possession of the partnership books at that time and had no knowledge of the $40,000 deposited in the partnership account on or about April 15, 1981, and immediately withdrawn by O'Brien. More importantly, even if Bank had any basis for believing that the $40,000 was used for a partnership purpose, which it was not, we fail to see how this affects the rights of the parties vis-à-vis the secured $59,000 note, which was an entirely separate loan transaction.

██ Bank next argues that Schwenke assumed full responsibility for repayment of the $59,000 by virtue of an oral side agreement between Schwenke and O'Brien. Both Schwenke and O'Brien testified at trial that they had engaged in a discussion regarding the breakup of their partnership, the gist of which was that Schwenke agreed to take over both the assets and the liabilities of S. & O.B. Schwenke recalled that this discussion took place shortly before the two renewed the $59,000 note. O'Brien could not remember when the discussion had occurred. This evidence supports the trial court's finding that "the Schwenkes had reached an oral understanding with Terry O'Brien, in or about April 1981, that the balance of the Schwenke and O'Brien indebtedness to Pacific Valley Bank was to be the responsibility of the Schwenkes."

But in the context of partnership dissolution, such a promise simply means a balance sheet entry which may be offset by others. The trial court refused to admit testimony as to other partnership assets and liabilities as such evidence would have transformed the case into a full blown partnership accounting action, something not contemplated by the pleadings. We do not disagree with that ruling, but in the absence of an accounting it cannot be ascertained which partner will ultimately owe what to whom even if $59,000 is credited to O'Brien. Thus, there is no factual basis for the conclusion reached by the court, and by the dissent herein, that Schwenke's promise to O'Brien carried with it an implied consent to the release of the security.[6]

Moreover, Schwenke's promise to O'Brien to assume responsibility for payment of the $59,000 note would not release Bank from its obligations under the loan contract unless Schwenke communicated his intent to Bank. The question therefore is whether Schwenke had effectively waived his right to enforce the security-first rule at the time Bank allowed reconveyances of the deeds of trust without applying the funds to the promissory note. ██ We note that a waiver of a legal right cannot be established without a clear showing of intent to give up such a right. (*E. D. McGillicuddy Constr. Co. v. Knoll Recreation Assn., Inc.* (1973) 31 Cal.App.3d 891, 901 [107 Cal.Rptr. 899].) The burden is on the party claiming the waiver to prove it by clear and convincing evidence that " 'does not leave the matter doubtful or uncertain ....' " (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 469 [204 Cal.Rptr. 568, 683 P.2d 248].)

██ The evidence here falls short of demonstrating a waiver by

---

[6]Although the trial court did not speak specifically of "implied consent," such a theory we think is reasonably reflected in the following language contained in the statement of decision: " ... in view of Mr. Schwenke's oral understanding with his co-obligor Terry O'Brien requiring Schwenke to satisfy the Pacific Valley bank note, the Bank acted properly in the manner in which it applied funds it received from O'Brien."

Schwenke of his statutory rights. In fact the trial court found that there were no "direct or implied agreements or understandings between the Schwenkes and the Bank regarding the manner of application of funds received by the Bank from the O'Briens." Bank's loan officer, Arrigo, testified that he discussed the disbursal of these funds with O'Brien at the time, but did not contact Schwenke. He had been told, though he could not remember by whom, that Schwenke had taken over full ownership of the development property which constituted the chief asset of the partnership. This was the extent of his knowledge. At no time did Schwenke represent to Bank that he was to be personally liable for the $59,000 obligation.

Since there was no agreement between Schwenke and Bank to alter the terms of the loan contract, including the security first rule, Bank is not excused from performance in accordance therewith. This proposition is clearly consistent with well-established principles of contract law. The trial court's conclusion to the contrary is based upon the premise that the protections of Code of Civil Procedure section 726 do not extend to Schwenke, and is therefore in error.[7]

In summary, we hold that Schwenke as comaker of a promissory note secured by a deed of trust is entitled to the protection of the one-action rule of Code of Civil Procedure section 726. Bank's release of security in violation of the statute relieved Schwenke of any personal liability on the promissory note.

We reverse the judgment in favor of plaintiff Pacific Valley Bank and direct that judgment be entered in favor of defendants Robert and Ute Schwenke. Costs on appeal are to be borne by Pacific Valley Bank.

Bonney, J.,* concurred.

**BONNEY, J.\***—I concur in the judgment and opinion of the court. Our holding today states a clear rule that each coborrower on a debt secured by a mortgage on real property is entitled to the benefit and protection of Code of Civil Procedure section 726 whether or not he or she has an ownership interest in the property securing the debt or has signed the deed of trust.

I respectfully write separately to express my concern regarding the issue of implied consent to the reconveyance raised by the issues and the dissent. In my view, section 726 becomes part of the contract between the lender

---

[7]The court's reliance on the doctrine of the "law of the case" is misplaced. This doctrine deals with the effect of an *appellate* decision on a subsequent retrial or appeal.

*Assigned by the Chairperson of the Judicial Council.

and each coborrower in this situation, and that contract cannot be modified so as to impose terms more onerous than those originally agreed to absent a showing of consent to the reconveyance communicated to the lender by the coborrower whose liability is in issue, on the basis of the kind of evidence ordinarily required in proving a modification of the terms of an existing contract by the mutual consent of the parties.

Consent in this situation cannot be implied simply and without more on the basis of agreements *inter sese* between coborrowers. Here there was no evidence that O'Brien and Schwenke had any discussion as to whether the property should be reconveyed as a consequence of Schwenke's agreement to become responsible for the loan as part of their division of partnership assets and liabilities, and for all we know all Schwenke ever agreed to do was assume a secured obligation, status quo. This case does not turn, however, in my opinion, on any factual issue of implied consent. It turns on the fact that the evidence shows that Schwenke did not communicate to the Bank his consent to the reconveyance and knew nothing about the reconveyance until the Bank filed this lawsuit against him.

The record before us discloses beyond any doubt that Pacific Valley Bank acted in utmost good faith and in what it believed was the best interests of all the parties. Unfortunately, not all transactions of this kind which reach the courts involve good faith conduct, and not all lenders are reliable banking institutions. Any rule which permits a lender to reconvey the property at the instance of one coborrower, without the consent of the other coborrower(s), communicated to the lender, and allows the lender to thereafter apply the proceeds to various unrelated transactions before arriving at the balance due from the now allegedly unsecured albeit unconsenting coborrower(s) opens the door to untold mischief.

And, as this case illustrates, it is easy to visualize the hazards and uncertainties that could be visited upon both lender and borrower by a rule which (1) would make effective a consent implied years after the event based on the imperfect recollection of the parties and which (2) would obviate the necessity of showing that the coborrower whose liability is in issue had communicated his consent in a legally effective way to the lender.

AGLIANO, P. J.—I respectfully dissent.

The trial court made a pivotal finding in this case which in my view compels affirmance of the judgment. The court found: "[T]he Schwenkes had reached an oral understanding with Terry O'Brien, in or about April 1981, that the balance of the Schwenke and O'Brien indebtedness to Pacific Valley Bank was to be the responsibility of the Schwenkes." Is it consistent for the

Schwenkes to have agreed to pay off the entire debt balance owing to the bank and then, when pressed to perform their promise, contend that O'Brien's property was to have remained primarily liable for the debt under Code of Civil Procedure section 726? Of course not! O'Brien's mortgages and Schwenkes' promise could not logically coexist. The Schwenkes' agreement can only be understood as having authorized O'Brien to apply to the bank and to obtain from it a reconveyance of the mortgages, thus leaving the debt unsecured.

As the majority acknowledges, "[s]ince the provisions of section 726 are designed for the protection of the debtor, he is entitled to waive them. (*Salter* v. *Ulrich* (1943) 22 Cal.2d 263, 266; . . ." (See also *Williams* v. *Reed* (1957) 48 Cal.2d 57, 67 [307 P.2d 353].) The Schwenkes waived the protection of the mortgages by implicitly consenting to their removal by O'Brien. Once this fact is established it is immaterial that the Schwenkes did not personally communicate their consent to the bank.

*Cooper* v. *Burch* (1906) 3 Cal.App. 470 [86 P. 719], relied on by the majority, actually supports the judgment. *Cooper* essentially found that the comaker of a promissory note had not waived protection of the security since he was not a party to releases of the security which had been arranged between his comakers and the promisee. The court, however, was careful to point out "but there is no evidence in the record that the defendant Patton concurred in or knew anything about this arrangement." (*Id.,* at p. 471.) Such is not the case here for the court's finding discloses that the Schwenkes and O'Brien together set the wheels in motion for release of the mortgages.

I would therefore conclude, as did the trial court, that since the indebtedness was not secured by mortgage at the time recovery was sought, the mortgage having been released with the Schwenkes' consent, section 726 was simply not applicable.

Respondent's petition for review by the Supreme Court was denied April 30, 1987.