Filed 11/21/14 unmodified opn. attached

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FIRST CALIFORNIA BANK,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MARY ALICE MCDONALD et al.,<br><br>  Defendants and Appellants. | F067812<br><br>(Super. Ct. No. CV272097)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the published opinion along with its concurrence filed herein on October 24, 2014, be modified as follows:

1. On page 10, the first full paragraph beginning with "Another component" and the footnote are deleted. The following paragraph and footnote are inserted in its place.

> Another component of the broader rule is the "security first" principle or rule, which requires the creditor to proceed initially against all the real property security before enforcing the underlying debt. (*Bernhardt*, *supra*, § 4.6, p. 4-6.)[7] The combination of the security first principle and

---

[7]    In this case, appellants contend Bank is barred from collecting a deficiency judgment against them because Bank violated the security first rule. Appellants did not allege below and do not contend on appeal that Bank violated the one action rule by pursuing an "action" before filing its judicial foreclosure lawsuit. Therefore, this opinion does not hold, and should not be interpreted as holding, that the arrangement Sally and Bank reached for the sale of the Shafter Property constituted an "action" or court proceeding.

the one action rule can be stated as follows: Pursuant to section 726, the creditor must pursue all of the real property security first in the form of a single legal action for judicial foreclosure.

2. On page 11 through 12, subheading "5 *'Security First' Principle*" AND the two full paragraphs that follow, including footnote 9, are relocated to page 10 following the first paragraph ending with "judicial foreclosure." This requires renumbering of all subsequent footnotes.

3. On page 12 subheading "*6. Examples Involving Multiple Parcels*" is added prior to the paragraph beginning with "To illustrate …." This will require renumbering of all subsequent subheadings.

4. On page 12 the paragraph beginning "To illustrate" is deleted and the following is inserted in its place:

> To illustrate the application of the section 726, suppose a debtor whose loan was secured by multiple parcels of real estate raises the security first principle as an affirmative defense in a judicial foreclosure action that did not include all of the parcels. The creditor can respond in a number of ways, including dismissing the foreclosure lawsuit. If the creditor decides to maintain the judicial foreclosure action, there are four ways in which that case might proceed.

5. At the end of the last full paragraph on page 17, after the sentence ending "were actually applied" add as footnote 12 the following, which will require renumbering of all subsequent footnotes:

> [12] Bank's petition for rehearing asserts this opinion "omits to mention the material fact in the present case that all proceeds from the sale of the Shafter Property were applied to the loan, thereby reducing the obligation of the co-debtor …." This incorrect representation of the contents of the record appears to be based on counsel's failure to differentiate between a fact that is stated in the moving party's separate statement and a fact that might be inferred from other facts set forth in the separate statement. Paragraph 9 of Bank's separate statement merely sets forth the *understanding* that Bank *would* receive the net proceeds from the sale of the Shafter Property. Based on this understanding between Bank and Sally, Bank's counsel infers the parties actually implemented the understanding and Bank received the proceeds. That inference is contrary to the statutory rules governing the use of inferences in connection with motions for summary judgment or adjudication. Under the statute, courts shall consider all inferences reasonably deducible from the evidence, but cannot draw inferences favorable to the moving party "if contradicted by other inferences …." (§ 437c, subd. (c); see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 337 [if evidence logically permits conflicting inferences, a

question of fact is presented].)  Here, the mere existence of an agreement about net proceeds allows one to logically infer that it was (1) performed in full, (2) performed only in part, or (3) not performed at all.

Similarly, we note that paragraph 9 of Bank's separate statement fails to indicate what happened to its deed of trust for the Shafter Property—specifically, whether the sale was subject to the deed of trust or whether Bank released the deed of trust so that the sale was free and clear of Bank's lien.  The omission of this material fact from the separate statement provides another ground for denying Bank's motion, but for purposes of this appeal, we (like appellants) have assumed Bank released its deed of trust.

Bank's petition for rehearing also asserts this opinion ignores the fact Sally had ostensible authority to act on behalf of appellants.  This purported fact is not among the material facts set forth in Bank's separate statement.  Thus, the assertion is another example of the failure to understand section 437c and how to establish facts for purposes of a motion for summary adjudication.

6.  In the footnote on page 18, now footnote number 13, the word "dissent's" is replaced with the word "concurrence's."

7.  On page 18, the third paragraph following subheading 2 beginning with "In addition" is deleted and the following paragraphs and footnote 14 are inserted in its place.

Bank contends that *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991 (*Wozab*) is controlling authority.  We disagree.

First, the majority in *Wozab* did not mention, criticize or expressly overrule the consent requirement set forth in *Schwenke*.

Second, there is no basis for concluding the California Supreme Court impliedly overruled *Schwenke*.  Approximately six years after *Wozab*, a unanimous California Supreme Court quoted *Schwenke* for the basic proposition that a secured creditor, by its own act, may deprive itself of the right to an action on the note for a deficiency judgment.  (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48.)  On the next page of the opinion, the court cited *Wozab* as follows:  "*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 1005 [275 Cal.Rptr. 201, 800 P.2d 557] [by acquiescing in creditor bank's decision not to foreclose and by demanding reconveyance, debtor caused the bank to forgo its security and waived the right to rely on Code of Civil Procedure section 726]."  Because *Wozab* and *Schwenke* were cited with approval in a subsequent Supreme Court opinion, we reject the position that *Wozab* impliedly overruled *Schwenke*.

Third, the discussion in *Wozab* confirms the importance of consent when the relationship involving the secured creditor, the debtor and the collateral is altered. The debtors in *Wozab* demanded the bank's reconveyance of the deed of trust after the bank had offset approximately $2,800 in the Wozabs' deposit account against a debt of over $975,000. (*Wozab*, *supra,* 51 Cal.3d at p. 1005.) The bank complied and the Wozabs accepted the reconveyance of the deed of trust, which led the majority to conclude the Wozabs had voluntary relinquished (i.e., waived) the protections of the security first rule. (*Ibid.*) By demanding that the bank not foreclose, the Wozabs "freely *chose* not to have the bank foreclose upon the security interest." (*Ibid.*, italics added.) Freely choosing something is the same as consenting to it. In contrast to the Wozabs, the Schwenkes did not request or otherwise consent to the reconveyance of the two deeds of trust that secured the promissory note.

Fourth, in *Wozab*, the majority concluded that when a secured lender violates the security first principle by offsetting funds in a deposit account, the appropriate remedy for the debtor is to demand (1) the return of the amount offset and (2) the lender pursue the real property security first. (*Wozab*, *supra,* 51 Cal.3d at p. 1006.) The court rejected the debtors' argument that the violation caused by the offset of $2,800 should bar any subsequent action for a personal judgment on the unpaid debt. The majority's statement that this result "is so harsh as to be punitive" (*ibid.*) is based on the fact that the lender had relinquished the real property security and the only way it could collect the debt was a personal action. Thus, the majority did not address the lesser consequence of the loss of the right to collect a *deficiency judgment* in a judicial foreclosure action. Here, Bank is not in the same position as the lender in *Wozab* because Bank can enforce the debt by judicially foreclosing on the remaining security. Consequently, the harsh result advocated in *Wozab* is different from the waiver of a deficiency judgment advocated by appellants in this case.[14]

Another reason we reject Bank's argument that *Schwenke* is bad law is our recent opinion citing *Schwenke* for the proposition that the *consent* of a debtor to an arrangement in which the secured creditor relinquishes the security without retiring the note can take the matter outside the protections of section 726. (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399 [debtor liable for balance of home equity line of credit

---

**14** Counsel for Bank has not identified an alternative consequence that they contend is more appropriate than waiver of a deficiency judgment. Thus, Bank's position appears to be that there are no consequences from its violation of section 726. *Wozab* does not establish the proposition that that there are no remedies (i.e., consequences) for violations of the security first principle.

that had been secured by junior deed of trust; lender released the junior deed of trust in a short sale arrangement approved by the debtor in writing].)

8. On page 19, in the first full paragraph beginning "Lastly, Bank" footnote number 15 is inserted between the sentence ending "securing the loan" and the sentence beginning "Here, John's death."

> **15** Bank's petition for rehearing asserts this "opinion has the potential to impact hundreds of millions, if not billions, of dollars in multi-party commercial loans" and "opens the sluice gates to decisions imposing a loss-of-debt penalty and other draconian consequences where a lender did not act in bad faith …." There is a Chicken Little "the sky is falling" quality to this assertion because, among other things, this case does not involve the loss of the *debt*, but only a waiver of the *deficiency judgment*.

9. On page 1 of the concurring opinion, the last sentence of the second paragraph is deleted and replaced with the following: "Therefore, I concur in the judgment, though I do not concur in all aspects of the majority's analysis."

10. On page 3 of the concurring opinion, in the third paragraph beginning "I am pleased" footnote 3 is inserted after the second sentence ending "to be punitive." This will require renumbering of all subsequent footnotes. The new footnote shall read:

> **3** In an order denying rehearing and modifying the opinion, the majority now addresses this notion raised in my original concurrence. The majority submits that the result in this case is less harsh than the one imposed in *Wozab*. (Maj. opn. at pp. 21-22 & fn. 16.) But the harshness of a remedy is a function of both its severity and the nature and scope of circumstances under which it is imposed. A $1 sanction can be harsh if imposed for blameless conduct. The result in this case is harsh not only because the Bank's loss of any deficiency judgment is significant, but also because the Bank's conduct does not seem worthy of sanction. While the punishment in *Wozab* may have been more severe, the bank's conduct in that case was also clearly more deserving of sanction. (See *Wozab*, *supra*, 51 Cal.3d at p. 1011 (conc. & dis. opn. of Broussard, J.) [improper bank setoffs constitute illegal conversion].)
>
> Here, there is no evidence of defalcation or other misconduct. Yet, the remedy imposed places the substantial burden of forfeiture upon the bank under conditions that do not suggest any improper motive but instead reflect a common practice under the law that happens to run afoul of the *Hibernia* rule in this instance.
>
> I do not join in the majority's disparagement of the Bank's concerns that the result in this case is unduly harsh.

11. On page 3 of the concurring opinion, in the first paragraph of section D the two sentences, beginning "While there is no evidence" and ending "appellants suffered any prejudice" are deleted and the following sentences shall be inserted in their place.

> While there is no evidence that the nonowner/codebtors (i.e., appellants) consented, the trial court found all of the proceeds of the sale were applied to the joint debt.[4] If the proceeds were so applied, it is highly unlikely appellants suffered any prejudice.

12. On page 4 of the concurring opinion, the text ", as here," is deleted from the penultimate sentence of the second paragraph of section D so that the sentence now reads:

> The law should provide that when (1) real property security is exhausted with the owner/codebtor's consent but without a nonowner/codebtor's consent and (2) all proceeds are applied to the joint debt: the nonconsenting codebtor is not bound by the actual sale price of the property.

13. On page 6 of the concurring opinion, the first full paragraph beginning "I urge the Legislature" is deleted and the following is inserted in its place.

> I urge the Legislature and Supreme Court to consider providing for alternative remedies when a *Hibernia* violation causes only hypothetical prejudice that can be cured by a lesser sanction.

There is no change in judgment.

Respondent's petition for rehearing is denied.

As to the majority opinion modifications:

_____
FRANSON, J.

I CONCUR:

_____

CHITTICK, J.[2]


I CONCUR as to the concurring opinion modifications:


_____
POOCHIGIAN, ACTING P.J.

---

[2]      Judge of the Superior Court of Fresno County, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

Filed 10/24/14 unmodified version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FIRST CALIFORNIA BANK, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARY ALICE MCDONALD et al., <br><br> Defendants and Appellants. | F067812 <br><br> (Super. Ct. No. CV272097) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. Sidney P. Chapin, Judge.

Calfee Konwinski, Christopher J. Konwinski; Wendel, Rosen, Black & Dean, Charles A. Hansen and Kevin R. Brodehl for Defendants and Appellants.

Epport, Richaman & Robbins, Steven N. Richman and Renata A. Guidry for Plaintiff and Respondent.

-ooOoo-

First California Bank (Bank) filed this judicial foreclosure action to collect a loan secured by two parcels of real estate. The loan had been made to a husband and wife and, after the husband died, the loan went into default. Bank and the wife agreed to a private

sale of one of the parcels that was her separate property. Afterward, Bank filed this action to foreclose on the remaining parcel and obtain a deficiency judgment.

Bank successfully moved for summary adjudication of its judicial foreclosure cause of action. The trial court's decree of judicial foreclosure stated Bank was entitled to obtain a deficiency judgment against the representatives of the husband's estate.[1] On appeal, appellants contend the trial court erred by holding them liable for a deficiency judgment.

Generally, a creditor to a loan secured by real property has two potential sources of repayment if the loan is not repaid and goes into default—proceeds from the sale of the real property collateral and a personal judgment against a debtor (or what is known as a deficiency judgment). For policy reasons, resort to real property collateral for repayment of secured loans is favored, and deficiency judgments are not, and creditors must follow certain statutory mandates in order to ultimately obtain a deficiency judgment.

There are two basic statutory requirements under Code of Civil Procedure section 726[2] for creditors seeking deficiency judgments: (1) "security first," which means that a creditor must first exhaust all real property security to qualify for a deficiency judgment; and (2) such exhaustion of the real property collateral must be through a single judicial foreclosure lawsuit. These requirements in section 726 are referred to as the "one form of action" rule. These statutory protections may be waived by debtors in certain situations.

Secured creditors are allowed to "exhaust" their collateral to repay secured loans in ways other than judicial foreclosure, such as nonjudicial foreclosure or private sales. However, the consequence of not following the dictates of section 726 is a waiver of the

---

[1] The representatives of the estate are Mary McDonald, Katherine Kelly, and John P. DeVincenzo, III. They were defendants in the judicial foreclosure action and are referred to as "appellants" in this opinion. A deficiency judgment was not sought against the wife because pursuit of a deficiency against her was prohibited by an order entered in her bankruptcy case.

[2] All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

creditor's right to a deficiency judgment.  In order to obtain a deficiency judgment, all real property collateral must be exhausted in one single action for judicial foreclosure.  If any of the real property collateral is exhausted through any other means, such as a private sale without the consent of the debtors, a deficiency judgment is barred.  Because Bank failed to follow the requirements of section 726 by disposing of the Shafter Property outside of judicial foreclosure and without appellants' consent or waiver, Bank has waived any right to a deficiency against them.

We therefore reverse the judgment.

## FACTS

On March 19, 2009, Sally DeVincenzo (Sally) and John P. DeVincenzo (John), husband and wife, signed a five-year promissory note stating they would pay Bank[3] the principal amount of $1,509,000, with interest.  Under the note, monthly installment payments were due, with the final balloon payment due in April 2014.  The note provided that, upon default, Bank could accelerate the note and declare all monies payable immediately due and payable.  Sally and John secured the note by signing a deed of trust that granted Bank an interest in real property located in Wasco, California (Wasco Property).

Also on March 19, 2009, Sally provided additional security for the note by signing a deed of trust for a property located in Shafter, California (Shafter Property).  The deed of trust stated Sally was a married woman and described the Shafter Property as Sally's "sole and separate property."

On a date not specified in the record, Sally sold the Shafter Property.  Bank's separate statement asserts Sally "requested that First California agree to the sale of the parcel.  First California agreed with the understanding that (a) First California would receive the net proceeds, and (b) the Borrowers would not be released of liability."

---

**3**     As used in this opinion, the term "Bank" includes First California Bank and its predecessor in interest, San Luis Trust Bank.

In September 2009, John died. A probate proceeding was initiated and appellants—his children—were appointed as the personal representatives of his estate.

The note went into default when the December 2009, payment was not made. No further payments were made. As a result of the lack of payment, Bank declared all sums under the note to be immediately due and payable, with interest and late charges.

The declaration of Bank's vice-president of special assets stated that, as of February 29, 2012, there was due an unpaid principal sum of $1,019,278.98 plus accrued interest of $158,868.23 and certain late charges, expenses and loan fees.

## PROCEEDINGS

In November 2010, Bank filed a complaint for judicial foreclosure on the Wasco Property and a deficiency judgment against Sally and appellants. Bank later filed a second amended complaint, which named appellants only in their capacities as personal representatives of John's estate.

Bank filed the motion for summary adjudication that is the subject of this appeal. In March 2013, following a hearing, the trial court issued a minute order granting the motion for summary adjudication of Bank's third cause of action for judicial foreclosure.

In June 2013, the trial court signed and filed (1) the formal order and (2) a decree for judicial foreclosure and order for writ of sale of the Wasco Property. The decree also stated appellants were liable for the subject debt and that a deficiency judgment could be entered against them in an amount to be determined after the sale of the Wasco Property.

Appellants appealed.

## DISCUSSION

### I. STANDARD OF REVIEW

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

Appellate courts determine whether a triable issue of material fact exists by conducting an independent review of "the record that was before the trial court when it

ruled on defendants' motion." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 68.) When conducting this independent review of the record, appellate courts view the evidence in the light most favorable to the nonmoving parties, resolving evidentiary doubts and ambiguities in their favor. (*Ibid.*)

Ordinarily, we methodically apply "the required step-by-step evaluation of the moving and opposing papers." (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1607 (*Brantley*).) In this case, however, we will adopt the approach employed by the parties and move directly to the central issue: Was Bank's right to collect a deficiency judgment against appellants dependent upon Bank obtaining their consent to the arrangement in which Bank released its deed of trust to the Shafter Property? Stated in terms of the summary adjudication statute, was appellants' consent a material fact that must be undisputed for Bank to prevail on its claim for a deficiency judgment? We answer "yes" to these questions.

## II. NECESSITY OF CONSENT TO PRIVATE SALE OF SECURITY

### A. Background—The Pleadings and Motion

#### 1. *Bank's Complaint*

Bank's second amended complaint included a cause of action for judicial foreclosure of the deed of trust. Bank alleged that because of the defaults on the note, Bank was entitled to enforce the deed of trust by judicial foreclosure on all of the defendants' rights in the Wasco Property. Bank's prayer for relief under its judicial foreclosure cause of action requested foreclosure against the Wasco Property and a deficiency judgment against John's estate.[4]

---

**4**    Specifically, Bank requested the court to (1) adjudge the deed of trust foreclosed and the usual judgment be made for the sale of the Wasco Property by the sheriff or court appointed commissioner and (2) enter a judgment against the "Estate for any deficiency that may remain after applying all of the proceeds of the sale of the [Wasco] Property."

### 2. Appellants' Answer

Appellants' answer asserted a number of affirmative defenses. Their seventh affirmative defense asserted that Bank failed to seek, in this action or in any other single action, a *foreclosure of all* the property that was or had been security for the debt, in violation of the requirements of section 726 and, therefore, Bank's recovery was barred.

### 3. Summary Adjudication—Bank's Motion and Separate Statement

Bank's moving papers included a separate statement of undisputed facts that defined the issue to be summarily adjudicated as follows: "There is no triable issue of material fact as to the third cause of action for Judicial Foreclosure." Bank's motion argued it should obtain a judgment on its third cause of action because (1) it was entitled to (a) judicial foreclosure on the Wasco Property and (b) a deficiency judgment against appellants, and (2) appellants' affirmative defenses had no merit.

### 4. Appellants' Opposition

Appellants' opposition papers asserted Bank's release and reconveyance of the deed of trust for the Shafter Property without their consent violated the security first principles of section 726, subdivision (a) (section 726(a)) and released them from personal liability for a deficiency judgment. Appellants did not contend the violation affected Bank's right to foreclose on the Wasco Property. Supplemental briefing filed by appellants in the trial court stated Bank remained able to pursue recovery against the Wasco Property under the deed of trust that remained in effect.

Based on the arguments presented below and on appeal, the question we must resolve is whether Bank waived its right to a deficiency judgment against appellants by violating the security first principle in section 726(a). The violation asserted is Bank's release of its deed of trust to the Shafter Property without the consent of appellants, which release of collateral meant Bank was not able to include all of the real property security in a single judicial foreclosure action.

B.      Overview of Section 726

Section 726 governs judicial foreclosures and contains the basic rules of law applicable to Bank's claim that is it entitled to (1) a decree of foreclosure and (2) a deficiency judgment.

1.      *Authorization for Judicial Foreclosure and Deficiency Judgments*

Section 726(a) authorizes the remedy of a judicial foreclosure by stating that a court may direct both the sale of encumbered real property and the application of the proceeds from that sale.[5]

As to deficiency judgments, subdivision (b) of section 726 (section 726(b)) provides that the decree for the foreclosure of a deed of trust "shall declare the amount of the indebtedness or right so secured and, *unless judgment for any deficiency … is waived by the judgment creditor …*, shall determine the personal liability of any defendant for the payment of the debt secured by the mortgage or deed of trust and shall name the defendants against whom a deficiency judgment may be ordered following the proceedings prescribed in this section." (Italics added.)

2.      *Debtor Protections Associated with a Deficiency*

Debtors liable for a deficiency judgment are protected from low bids at the judicial foreclosure auction by the fair value limitation contained in section 726(b). Under that limitation, the amount of the deficiency judgment is calculated by subtracting the fair value of the property from amount of the indebtedness. (§ 726(b).) If the creditor applies for a fair value determination within three months after the foreclosure sale, the trial court determines the fair value of the property and calculates the amount of the deficiency to be awarded. (Bernhardt, Cal. Mortgages, Deeds of Trust, and Foreclosure Litigation (Cont.Ed.Bar ed. 2014) §§ 3.86-3.87, pp. 3-60 to 3-61 (*Bernhardt*).)

---

[5]      Subdivision (a) also sets forth the "one form of action" rule, which is discussed below in part II.B.4, *post*.

A second protection afforded debtors liable for a deficiency judgment is the right to postsale redemption. (§ 726, subd. (e); *Bernhardt*, *supra*, § 3.90, pp. 3-64 to 3-65.) This statutory right is asserted against the *purchaser* at the foreclosure sale and allows the debtor to redeem the property based on the foreclosure sale price, not on the amount of the secured debt. (*Bernhardt, supra,* § 3.90, p. 3-64.) Creditors may cut off the debtor's redemption rights by waiving their right to a deficiency judgment and having that waiver clearly reflected in the decree of foreclosure. (*Id*. at p. 3-65; see *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 602.)

These two debtor protections are mentioned here because appellants argue the trial court's order effectively allowed the agreement between Bank and Sally regarding the Shafter Property to deprive them of the protections they would have had if the Shafter Property had been included in the judicial foreclosure action.

### 3. Creditor's Waiver of the Deficiency

Appellants' challenge to the deficiency judgment is based on the text of section 726(b) that states a creditor's right to a deficiency judgment can be lost—that is, "waived."[6] For our purposes, a creditor may "waive" its right to a deficiency by failing to follow the mandates of section 726 *and* not obtaining the consent of the debtor to do so.

The consequences of a waiver by the creditor are described in section 726(b) as follows: "In the event of waiver, … the decree shall so declare and there shall be no judgment for a deficiency." Therefore, a creditor seeking to obtain a deficiency judgment

---

[6] As used in section 726(b), the term "waived" has not been construed narrowly to mean a creditor intentionally relinquished or abandoned a known right. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 [accurate definition of waiver is an ""intentional relinquishment or abandonment of a known right""].) Instead, section 726(b)'s use of "waived" includes the forfeiture or loss of any right to a deficiency that results by operation of law when a creditor, regardless of its actual intent, acts in a way that violates the security first principle. (See *Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, 140 (*Schwenke*) [creditor who divests himself of the security without the consent of the debtors "has waived his right to proceed on the note"].)

in a judicial foreclosure action will not succeed if the creditor has "waived" its right to a deficiency.

### 4. One Form of Action Rule

Here, appellants contend that "Bank waived its right to a deficiency judgment against Appellants when Bank sidestepped the requirements of section 726 by agreeing with only *one* debtor (Sally) on the private sale of the Shafter … Property, and releasing and reconveying the Shafter Deed of Trust—all without the knowledge and consent of the co-debtor (Appellants)."

Appellants' contention invokes the "one form of action" rule, which is contained in the first sentence of section 726(a): "There can be but *one form of action* for the recovery of any debt or the enforcement of any right secured by mortgage upon real property ..., which action shall be in accordance with the provisions of this chapter [governing judicial foreclosures]." (Italics added.)

The "one form of action" rule has many facets as a result of courts developing specific principles to address the wide variety of situations that can arise when a debt is secured by real property. Consequently, our first step in discussing that rule is to define certain terms used for particular situations. We use the statutory phrase "one form of action" rule to describe the requirements of section 726 in their broadest form. We shorten that phrase and use the phrase "one action rule" to refer to the prohibition against multiple lawsuits or legal actions to collect a debt secured by real estate. (*Bernhardt*, *supra*, § 4.8, p. 4-7 [one action rule prohibits multiplicity of actions].) Thus, for purposes of this opinion, the "one action" rule is a component of the broader "one form of action" rule.

Another component of the broader rule is the "security first" principle or rule, which requires the creditor to proceed initially against all the real property security, in a single judicial foreclosure action, before enforcing the underlying debt. (*Bernhardt*,

*supra*, § 4.6, p. 4-6.)[7]  Stated another way, the creditor must pursue all of the security first in the form of a single legal action for judicial foreclosure.

When, as in this case, a loan is secured by multiple parcels of real property, the security first principle and one action rule of section 726(a) have been summarized by a practice guide as follows:

> "The one [form of] action rule of CCP §726(a), as judicially interpreted, generally requires that if an obligation is secured by *any* real property, *all* of that property must be included in a single foreclosure lawsuit if the creditor seeks judicial foreclosure or a personal judgment on the debt. [Citations.]  Failure to include all the required real property provides the defendant with an affirmative defense [citations]; if that defense is not timely asserted, a sanction effect is triggered [citations]." (*Bernhardt*, *supra*, § 9.5, p. 9-8.)[8]

This summary reflects the California Supreme Court's interpretation of the one form of action provision in section 726(a) to mean:

> "'When a creditor has more than one parcel of real property … securing a single debt, the debtor may compel the creditor to include *all* the security he has for that debt in a single judicial foreclosure action by raising CCP 726 as an affirmative defense.…  Occasionally, however, either through design or inadvertence, a creditor fails to exhaust all his security in one action ....  When the creditor tries to recover the balance owing or take the remaining security, the following questions arise: [¶] .... Can he take a deficiency or personal judgment on the balance owing?  ...  The answer … is "No."'" (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 733, fn. 2 [quoting Professor Hetland], italics added.)

When a debtor successfully raises section 726 as an affirmative defense, the creditor will be forced to exhaust the security in one proceeding before being entitled to

---

[7]     In this case, appellants contend Bank is barred from collecting a deficiency judgment against them because Bank violated the security first rule.  Appellants did not allege below and do not contend on appeal that Bank violated the one action rule by pursuing an "action" before filing its judicial foreclosure lawsuit.

[8]     The sanction aspect of the one form of action rule is not described in this opinion because appellants have asserted it as an affirmative defense to the claim for a deficiency judgment.  Thus, the principles that define how the one form of action rule is used as a sanction are not relevant here.

obtain a deficiency judgment against the creditor. (*Walker v. Community Bank, supra,* 10 Cal.3d at p. 734.) If the creditor is unable to include all the real property security in the judicial foreclosure action, the creditor will be barred from obtaining a deficiency judgment.

The purpose of section 726 and California's antideficiency statues is to (1) prevent a multiplicity of actions, (2) compel creditors to exhaust all of the security before any entry of a deficiency judgment, and (3) require the debtor be credited with the fair market value of the secured property before being subjected to personal liability. (*Walker v. Community Bank*, *supra*, 10 Cal.3d at p. 736.) In addition, the limits on the right of creditors to recover a deficiency judgment encourage responsible lending practices that do not overvalue the collateral and, when property values decline during a general or local depression, prevent the aggravation of the downturn that could occur from large deficiency judgments. (*Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 42.)

### 5. "Security First" Principle

Because appellants' defense against a deficiency judgment is based on the security first principle in section 726 (not the one action rule), we will discuss that principle in further detail. The "security first" principle or rule is the fundamental requirement that a creditor must proceed against the security initially.[9] (*Bernhardt*, *supra*, § 4.6, p. 4-6.) The security first principle has been described as the linchpin of California's antideficiency scheme (*Bernhardt*, *supra*, § 4.6, p. 4-7) because the creditor must comply with the principle to obtain a deficiency judgment against the debtor. (*Schwenke*, *supra*, 189 Cal.App.3d at p. 140.)

---

[9]     Professor Richard C. Maxwell described this requirement as the creditor's "duty to resort to security." (Maxwell, et al., *California Cases on Security Transactions in Land* (2d ed. 1975) p. 217, capitalization omitted.)

"Security first" means that a creditor must first exhaust all real property security through judicial process in the "one form of action" authorized by section 726—that is, a judicial foreclosure. (*Schwenke*, *supra*, 189 Cal.App.3d at p. 140.) This principle is violated when a secured creditor attempts—by judicial foreclosure *or otherwise*—to obtain a personal judgment against a debtor or reach unpledged assets before first exhausting all the real property security in a judicial foreclosure action. (*Bernhardt*, *supra*, § 4.6, p. 4-7; *Thoryk v. San Diego Gas & Electric Company* (2014) 225 Cal.App.4th 386, 398 [security first principle requires that all of the security be exhausted prior to the recovery of a personal judgment against a debtor].)

To illustrate the application of the section 726's security first principle, suppose a debtor raises the principle as an affirmative defense in a judicial foreclosure action. The creditor can respond in a number of ways, including dismissing the foreclosure lawsuit. If the creditor decides to maintain the judicial foreclosure action, there are four ways in which that case might proceed.

First, if the omitted security still is subject to the creditor's lien, the creditor could correct the violation of the security first principle by amending its judicial foreclosure action to include the omitted security.

Second, if the omitted security is no longer available, the creditor will not be able to include (i.e., exhaust) that security in the judicial foreclosure action.[10] This inability to comply with the security first principle is not an absolute bar to a deficiency judgment, since a creditor might to able to obtain a deficiency by showing that the debtor waived its protections under section 726. (*Schwenke*, *supra*, 189 Cal.App.3d at pp. 142-143.) The most common type of debtor waiver occurs when the debtor consents to the arrangement

---

[10]     This is what occurred in this case because Bank cannot include the Shafter Property in its judicial foreclosure action.

in which that security was released.[11]  (See Civ. Code, § 3515 [whoever "consents to an act is not wronged by it"].)

Third, the creditor might be able obtain a deficiency judgment by showing one or more of the various exceptions to the antideficiency protections apply.  (See *Thoryk v. San Diego Gas & Electric Company*, *supra*, 225 Cal.App.4th at p. 393.)

Fourth, if none of these avenues for obtaining a deficiency are available, the creditor could still proceed with the judicial foreclosure, but without the right to a deficiency judgment.  We note it is unlikely that a creditor would choose this path, without a deficiency, since it is more expensive than a nonjudicial foreclosure, a process that also prevents the creditor from collecting any deficiency.  (See *Bernhardt*, *supra*, § 9.5, p. 9-9.)

### 6. *Conceptual Foundation for Security First Principle*

When debtors and a creditor enter into a note and deeds of trust, those documents constitute one loan contract.  (*Schwenke*, *supra*, 189 Cal.App.3d at p. 141; 4 Witkin, Summary of Cal. Law (10th ed. 2005) Security Transactions in Real Property, § 135, p. 934.)  By choosing this form of debt instrument, the creditor is consenting to a relationship that is subject to the rules of law that govern deeds of trust and deficiencies, including the rules in section 726.  (*Schwenke*, *supra*, at p. 141.)  Similarly, the debtors are entitled to rely on those laws.  (*Ibid.*)  Thus, "the debtor by signing a note secured by a deed of trust, does not make an absolute promise to pay the entire obligation, but rather makes only a conditional promise to pay any deficiency that remains if a judicial sale of the encumbered property does not satisfy the debt."  (*Id.* at p. 140.)

The idea that a debtor may relinquish the protections of section 726—protections which are made a part of the parties' contractual relationship by operation of law—is rooted in the concept that contracts are formed by the manifestation of mutual consent of

---

[11] This did not occur in this case because appellants did not consent to the transaction in which Bank released its deed of trust on the Shafter Property.

the parties.  (See Civ. Code, §§ 1550 [consent is an essential element of a contract], 1565 [essentials of consent].)  When a debtor consents to an arrangement in which the creditor releases some of the real property security, the debtor has, in effect, agreed to a modification of the terms of the original contract, which required the creditor to pursue that real property security in a judicial foreclosure proceeding before obtaining a deficiency judgment.  An obvious example of this type of arrangement involves a debtor who wants to sell a parcel that secures a loan and, to accomplish this sale free and clear of the creditor's deed of trust, enters into an agreement with the creditor in which the creditor agrees to release the deed of trust in exchange for something, usually the application of sale proceeds to the loan balance.

When one debtor and the creditor agree to the disposition of real property collateral without the consent of codebtors, their agreement does not amend the codebtors' contractual obligations or the conditional nature of the codebtors' promise to pay the debt.  (See *Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 31 [modification of a contractual obligation requires mutual assent].)

### 7. *Schwenke*

The foregoing legal principles regarding judicial foreclosure and a creditor's waiver of the right to a deficiency judgment were applied by the court in *Schwenke*, *supra*, 189 Cal.App.3d 134 to protect codebtors on a loan secured by real property.

In *Schwenke*, *supra,* 189 Cal.App.3d 134, a bank filed suit against comakers of a promissory note, Robert and Ute Schwenke, and sought to collect the balance of that note from them.  After a bench trial, the court found the Schwenkes were liable for the entire amount of principal and interest due on the note, plus costs and attorney fees.  (*Id*. at p. 140.)  The appellate court reversed and directed that judgment be entered in favor of the Schwenkes.  (*Id*. at p. 146.)

The issue framed by the appellate court was whether comakers of a promissory note were entitled to enforce the one form of action rule, even though they were not a

party to the deed of trust securing the debt.  (*Schwenke*, *supra*, 189 Cal.App.3d at p. 137.)  The court concluded that they were protected by section 726's one form of action rule.

In that case, Robert Schwenke and Terry O'Brien were partners engaged in the business of property development.  (*Schwenke*, *supra*, 189 Cal.App.3d at p. 137.)  Schwenke and O'Brien, and their wives, signed a promissory note evidencing a debt of $59,000 to Pacific Valley Bank.  The loan proceeds were deposited into the partnership's bank account for use in the business.  The note stated that it was secured by deeds of trust on two properties, both of which were owned by the O'Briens.  (*Ibid*.)  In other words, the Schwenkes provided no real property collateral to secure the debt.

Later, Schwenke and O'Brien agreed to dissolve their partnership and Schwenke, apparently, orally agreed to assume the partnership loan.  In connection with escrows O'Brien used for the refinancing of his two properties that had secured the $59,000 loan, Pacific Valley Bank submitted a demand to the escrow agent for payment of a total of $74,000 and, upon receipt of this amount, delivered to the escrow agent reconveyances of the deeds of trust on the two properties.  These reconveyances released the security for the partnership loan.  (*Schwenke*, *supra*, 189 Cal.App.3d at pp. 137-138.)  In exchange, Pacific Valley Bank received $74,000 in proceeds from the new loan and applied those proceeds to satisfy a separate O'Brien unsecured loan, leaving a balance remaining on the partnership loan.  (*Ibid*.)  The Schwenkes were not aware of the refinance transaction or, more importantly, that the bank had released the real property collateral that secured the partnership loan.  As the Schwenkes were not aware of the release of the collateral, they did not consent to it.  (*Id*. at p. 142.)

Based on these facts, the appellate court concluded that the Schwenkes, as comakers of the promissory note who had not signed the deeds of trust securing the note, were protected by the one form of action rule because the security for the debt had been released without their consent.  (*Schwenke*, *supra*, 189 Cal.App.3d at p. 146.)  Schwenke's oral agreement with O'Brien to assume liability for the partnership loan did not operate as a waiver by Schwenke of the one form of action rule because, in the

court's view, such a waiver was dependent upon him giving his consent to *the bank's release of the security*. (*Id*. at p. 145.)

Here, appellants rely on *Schwenke* to support their argument that the security first principle in section 726(a) bars any liability for a deficiency because Bank, without their consent, released part of the security for the note when it allowed Sally to sell the Shafter Property in a private sale. Appellants quote the following statement from *Schwenke*:

> "Schwenke was not notified of, and did not consent to, the reconveyance of the deeds of trust securing the promissory note. Therefore, as to Schwenke, Bank's dealings with O'Brien amounted to a unilateral divestment of security in contravention of the protections provided in section 726. [Citation.] Bank's release of the security needn't be characterized as an 'action.' What is critical is that it was done without Schwenke's knowledge or consent." (*Schwenke*, *supra*, 189 Cal.App.3d at p. 142.)

Based on this statement, appellants argue that summary adjudication of its liability for a deficiency judgment was improper because Bank dealt exclusively with Sally on the private sale of the Shafter Property and released and reconveyed the deed of trust on that property without their knowledge or consent.

### 8. Conclusion

Based on the text of section 726, the conceptual foundation for the security first principle, *Walker v. Community Bank*, *supra*, 10 Cal.3d 729, which is mentioned in part II.B.4, *ante*, and *Schwenke*, *supra*, 189 Cal.App.3d 134, we conclude that Bank was required to include both parcels of real property security in its judicial foreclosure action unless Bank can show that all of the debtors consented to the release of the Shafter Property as security for the loan. We further conclude that Bank's release of the Shafter Property without appellant's consent would operate as a waiver of Bank's right to a deficiency judgment under the provision in section 726(b) that provides for such a deficiency "unless judgment for any deficiency … is waived by the judgment creditor .…"

It follows from these legal conclusions that appellant's consent to the release of the Shafter Property is a material fact for purposes of Bank's motion for summary adjudication.

### C. Evidence Regarding Appellant's Consent

#### 1. *Absence of Consent to Release of Shafter Property*

There is no dispute that the Shafter Property was once security for the note and that Bank agreed with Sally that she could sell the Shafter Property.

On the matter of consent, Bank does not assert that it obtained appellant's consent before allowing Sally to sell the Shafter Property. Instead, Bank's assertions of fact about the Shafter Property and the agreement reached with Sally are limited to the following:

> "9. Originally, there were two parcels of collateral for this loan. The first parcel was sold by Sally DeVincenzo. Defendant Sally DeVincenzo requested First California agree to the sale of the parcel. First California agreed with the understanding that (a) First California would receive the net proceeds, and (b) the Borrowers would not be released of liability."

Appellants responded to this assertion of fact by presenting declarations that stated they did not consent, orally or in writing, to Bank's release of the security interest in the Shafter Property. Appellants correctly note that Bank's moving papers did not establish how the proceeds from the sale of the Shafter Property were actually applied.

Therefore, the facts before this court do not establish that Bank satisfied the consent requirement set forth in *Schwenke*. By releasing the Shafter Property as collateral for the loan, without the consent of appellants, and allowing the property to be sold through a private sale, Bank failed to exhaust all security through the one form of action authorized by section 726—that is, a judicial foreclosure. (*Walker v. Community Bank*, *supra*, 10 Cal.3d at p. 733, fn. 2 [when a debt is secured by multiple parcels, "'the debtor may compel the creditor to include all the security he has for that debt in a single

judicial foreclosure action by raising CCP 726 as an affirmative defense'"]; see *Bernhardt*, *supra*, § 9.5, p. 9-8.)[12]

###### 2.    *Bank's Arguments Against the Consent Requirement*

Because consent is absent in this case, Bank contends that consent is not a material fact because *Schwenke* is bad law or, alternatively, because this court should recognize an exception to the consent requirement.

We decline Bank's invitation to conclude *Schwenke* is bad law.  *Schwenke's* holding that a secured creditor has waived its right to a deficiency when it releases real property security without the consent of a co-obligor on the debt is consistent with the statutory language and the concepts underlying the security first principle.

In addition, *Schwenke* has been cited by the California Supreme Court for the more basic proposition that a secured creditor, by its own act, may deprive itself of the right to an action on the note.  (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48.)  Also, this court recently cited *Schwenke* for the proposition that the *consent* of a debtor to an arrangement in which the secured creditor relinquishes the security without retiring the note can take the matter outside the protections of section 726.  (*Bank of America, N.A. v. Roberts* (2013) 217 Cal.App.4th 1386, 1398-1399 [debtor liable for balance of home equity line of credit that had been secured by junior deed of trust; lender released the junior deed of trust in a short sale arrangement approved by the debtor in writing].)

Furthermore, other courts of appeal have cited *Schwenke* and referred to its consent requirement.  (E.g., *Paykar Construction, Inc. v. Spilat Construction Corp.* (2001) 92 Cal.App.4th 488, 496 [Second App. Dist.]; *Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 614 [Fourth App. Dist.]; *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1668 [Sixth App. Dist.]; see also *National Enterprises, Inc. v.*

---

**12**    The dissent's position that Bank complied with the security first principle is contrary to the Supreme Court's interpretation of how section 726 applies to debt secured by multiple parcels.

*Woods* (2001) 94 Cal.App.4th 1217, 1238 [Third App. Dist. stated that a comaker of a note is entitled to protection of the one form of action rule, but did not mention the consent requirement]; 4 Witkin, Summary of Cal. Law, *supra*, § 135, p. 934 [summarizing *Schwenke*].)

Lastly, Bank suggests the absence of cases involving loans with multiple debtors secured by more than one parcel of real property demonstrates the reasoning in *Schwenke* is unreliable. We disagree with this inference. Instead, the lack of further appellate decisions since *Schwenke* shows that bankers and their lawyers have had little trouble applying the rule of law that the consent of all debtors must be obtained by the creditor before releasing any parcels securing the loan. Here, John's death and the fact that Sally was not appointed as the representative of her husband's estate created an unusual wrinkle. Thus, when Bank released the Shafter Property, it might not have realized appellants had stepped into John's shoes as codebtor and, as a result, their consent was necessary if Bank wished to hold them liable for a deficiency.

Therefore, we conclude the consent rule adopted in *Schwenke* remains good law.

Based on the foregoing and the contractual foundation of the relationship between Bank and appellants, we also conclude that an exception to the consent requirement is not justified by the undisputed facts presented in this case. In short, a creditor and one of the debtors should not be able to modify the contractual obligations of the codebtors without the codebtor's consent to that modification.

Restating these conclusions in the language of the summary adjudication statute, appellants' consent was a material fact that Bank needed to show was undisputed to obtain summary adjudication of its third cause of action and establish its right to a deficiency judgment against appellants.

D.    Valueless Security When the Lawsuit is Filed

Bank presents an alternate argument that does not involve the codebtors' consent. Bank contends that "security" for purposes of the "security first" principle is determined at the time of the filing of the action, not when the loan was executed. Bank supports

their view of the law by citing *Bank of America v. Graves, supra,* 51 Cal.App.4th 607, in which the court stated:

> "However, when the value of the security has been lost through no fault of the creditor, the creditor may bring a personal action on the debt. (*Hibernia S. & L. Soc. v. Thornton* (1895) 109 Cal. 427, 429 [42 P 447].)[13]  The court in *Brown v. Jensen* (1953) 41 Cal.2d 193, 195 [259 P.2d 425] explained, 'It has been held under [section 726] that where the security has been exhausted or rendered valueless through no fault of the mortgagee, or beneficiary under a trust deed, an action may be brought on the debt on the theory that the limitation to the single action of foreclosure refers to the time the action is brought rather than when the trust deed was made, and that if the security is lost or has become valueless *at the time the action is commenced*, the debt is no longer secured.'" (*Id.* at p. 611, italics added.)

The foregoing rule about lost or valueless security does not apply to the facts of this case for at least two reasons.  First, the security for the loan, which included both the Shafter Property and the Wasco Property, has not been lost or become valueless at the time Bank commenced its lawsuit.  The Wasco Property still secured the loan and, therefore, a judicial foreclosure action rather than a personal action on the debt was appropriate.

---

**13**     Conversely, when a creditor, "by his own act or neglect, deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action upon the note." (*Hibernia S. & L. Soc. v. Thornton*, *supra*, 109 Cal. at p. 429 (*Hibernia*).)  In other words, a creditor is not "permitted without the consent of the mortgagor to release the mortgage for the purpose of bringing an action on the note." (*Ibid*.)  When the creditor makes such a release, it cannot comply with section 726's requirement to include all of the security in a single judicial foreclosure action.  *Hibernia* identifies one of the consequences of this inability to comply with section 726—namely, the creditor is barred from pursuing a personal action on the note.  Here, in contrast, appellants assert Bank's violation of the requirement to include all security in a single judicial foreclosure action constituted a waiver of Bank's right to obtain a deficiency judgment in the judicial foreclosure action.  (See *Espinoza v. Bank of America, N.A.* (S.D.Cal. 2011) 823 F.Supp.2d 1053, 1060 ["*Hibernia* rule is not itself an antideficiency protection"].)

Second, the Shafter Property was not exhausted or lost through no fault of Bank. Instead, Bank was responsible for the exhaustion or loss of that part of the security because it released its deed of trust on the Shafter Property pursuant to its agreement with Sally, without the consent of appellants.

Therefore, we conclude the principles regarding valueless or lost security that are set forth in *Bank of America v. Graves*, *supra*, 51 Cal.App.4th 607 do not apply to the secured loan Bank seeks to enforce in this judicial foreclosure action.

E.  Effect of Our Decision

Pursuant to section 437c, subdivision (f)(1), "[a] motion for summary adjudication shall be granted only if it completely disposes of a cause of action …." Here, Bank's motion did not completely dispose of the third cause of action for judicial foreclosure because, despite showing it was entitled to foreclose judicially on the Wasco Property, Bank did not show it was entitled to recover the deficiency from appellants. As a result of this partial showing, the motion for summary adjudication of the third cause of action should have been denied.

Furthermore, appellate courts are not authorized to summarily adjudicate subsidiary issues within a cause of action when those issues do not "completely dispose[] of [the] cause of action." (§ 437c, subd. (f)(1).) Therefore, we cannot direct the trial court to grant summary adjudication on the issue of Bank's right to judicially foreclose on the Wasco Property and deny summary adjudication as to Bank's right to a deficiency judgment.

On remand, Bank may pursue its right to foreclose on the Wasco Property and *might* be able to obtain a deficiency judgment if it can prove appellants consented to the release of the Shafter Property and the application of the proceeds from that sale. If Bank believes it will be unable to prove consent, it might decide to pursue a nonjudicial foreclosure against the Wasco Property. Nothing in this opinion prevents Bank from choosing that alternate method of foreclosure.

**DISPOSITION**

We reverse (1) the order granting the motion for summary adjudication of the third cause of action and (2) the related decree for judicial foreclosure and order for writ of sale of real property.  The matter is remanded to the superior court with directions to enter a new order denying the motion for summary adjudication.  Appellants shall recover their costs on appeal.

_____

Franson, J.

I CONCUR:


_____

Chittick, J.*

---

* Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

POOCHIGIAN, ACTING P.J., concurring.

Code of Civil Procedure section 726[1] creates several limitations on the ability of mortgagees to recover debts secured by a mortgage upon real property. (See § 726, subd. (a).) Two of those limitations take center stage in this case: The one-action and security-first rules. As explained below, the bank in this case violated neither.

However, a third rule – known as the *Hibernia* rule[2] – does defeat the bank's position. Therefore, I concur in the judgment.

**A.** *One-Action Rule*

The one action rule provides that a "secured creditor can bring only one lawsuit to enforce its security interest and collect its debt." (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997 (*Wozab*).) " 'The only 'action' that is permitted is foreclosure; any other 'action' is a violation of the rule that invokes severe sanctions." [Citation.]' " [Citation.]" (*Ziello v. Superior Court* (1995) 36 Cal.App.4th 321, 331, italics omitted.) "The purpose of the one action rule is to protect debtors from multiple collection actions …." (*Kinsmith Financial Corp. v. Gilroy* (2003) 105 Cal.App.4th 447, 453.)

Whether a lender's conduct constitutes an "action" for purposes of the one-action rule is answered by section 22's definition of that term. (See *Wozab*, *supra*, 51 Cal.3d at p. 998.) Section 22 provides: "An action is *an ordinary proceeding in a court of justice* by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22, italics added.)

Here, the alleged "action" was the bank's cooperation in Sally's private sale of the Shafter property. This conduct had nothing to do with a "proceeding in a court of

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

[2] See *Espinoza v. Bank of America, N.A.* (2011) 823 F.Supp.2d 1053, 1060.

justice" (§ 22) and "was therefore not an action within the meaning of section 22." (*Wozab*, *supra*, 51 Cal.3d at p. 998.)  The one-action rule was not violated.

**B.** *Security-First Rule*

"Section 726 embodies more than the 'one-action' rule." (*Wozab*, *supra*, 51 Cal.3d at p. 999.)  The statute also requires a particular "chronology." (*Id.* at p. 1004.) Specifically, the security first rule requires "a secured creditor to proceed against the security before enforcing the underlying debt. [Citation.]" (*Id.* at p. 999)  The purpose of this rule is to "require[] a secured creditor to exhaust all security first." (*Walker v. Community Bank* (1974) 10 Cal.3d 729, 736.)

The chronology in this case is undisputed.  First, Sally sold the Shafter property (a pledged asset) with the bank's permission.  Second, the bank obtained a judicial foreclosure decree with respect to the Wasco property (a pledged asset).  Thereafter, the bank presumably planned to seek a deficiency judgment against appellants as allowed by the foreclosure decree.

This chronology complies with the security-first rule.  Assuming the bank was "proceeding against the security" when it consented to the Shafter property sale, it did so before seeking to enforce the underlying debt against appellants' unpledged assets. Because the bank proceeded against the security before enforcing the underlying debt, it did not violate the security-first rule.

**C.** *The Hibernia Rule*

The resolution of this case actually hinges on a third rule:  The *Hibernia* rule.

Generally, "a creditor who holds multiple security, including real property, for a single debt must include all of the security in a single action. [Citations.]" (*National Enterprises, Inc. v. Woods* (2001) 94 Cal.App.4th 1217, 1232.)  Here, not all of the

security was included.  Specifically, the Shafter property was omitted because it had been sold before this suit was filed.

In some cases, the failure to include all security is excused.  For example, when "the mortgagor's title to the land has become extinguished subsequent to the making of the mortgage … the mortgagee need not … foreclos[e] before he can have a judgment on the note" unless the creditor is responsible for extinguishing the security.  (*Hibernia Sav. & Loan Soc. v. Thornton* (1895) 109 Cal. 427, 429 (*Hibernia*).)  This is known as the *Hibernia* rule.  (*Espinoza v. Bank of America, N.A.*, *supra*, 823 F.Supp.2d at p. 1060.)

Here, Sally's title to the Shafter property was extinguished after the deed of trust was executed.  Thus, the omission of the Shafter property from the present suit would have been excused under the *Hibernia* rule if the bank had played no part in the extinguishment of Sally's title.  However, in this case the bank expressly agreed to the transaction that extinguished Sally's title (i.e., the short sale).  Thus, the bank's choice to permit the sale of the Shafter property is the cause of its present inability to foreclose on all of the real property security in a single lawsuit.  As a result, it has lost the right to an action on the note.  (See *Hibernia*, *supra*, 109 Cal. at p. 429.)

**D.** *The Hibernia Remedy is Unduly Harsh Given the Facts of this Case*

I am pleased the majority's analysis includes discussion of *Hibernia*, which is the dispositive authority on these facts.  However, the consequence imposed by the *Hibernia* rule in this case is "so harsh as to be punitive."  (*Wozab*, *supra*, 51 Cal.3d at p. 1006.)  Here, the codebtor who owned the real property security in question consented to its exhaustion outside the procedure of judicial foreclosure.  While there is no evidence that the nonowner/codebtors (i.e., appellants) consented, all of the proceeds of the sale were

3

applied to the joint debt.**3** Thus, it is highly unlikely appellants suffered any prejudice. If appellants had been aware of the proposed sale of the Shafter property, they either would have acquiesced or refused consent. If they had consented, the bank would prevail on appeal today. If they had refused consent, the bank would have foreclosed on both the Shafter and Wasco properties in a single action. Thus, the lack of notice was inconsequential because the bank would have obtained a deficiency judgment regardless of how appellants would have responded. Yet it is that very lack of notice that forever bars the bank from obtaining a deficiency judgment in this case.

The only way appellants could have been prejudiced is if the Shafter property was sold below fair value.**4** But there is a remedy for this potential prejudice that is far less draconian than complete loss of the right to an action on the note. (See *Kirkpatrick v. Westamerica Bank* (1998) 65 Cal.App.4th 982, 986 ["Section 726 does not prescribe a sanction for violation of the one form of action rule. Rather, the courts have fashioned common law remedies to advance its purposes. [Citations]"].) The law should provide that when, as here, (1) real property security is exhausted with the owner/codebtor's consent but without a nonowner/codebtor's consent and (2) all proceeds are applied to the joint debt: the nonconsenting codebtor is not bound by the actual sale price of the property. The nonowner would be afforded an opportunity to prove the fair value of the security was higher than the actual sale price.

---

**3** This is in contrast to *Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134, where the majority of the proceeds of the nonconsensual transaction were used for the sole benefit of one codebtor. (See *id*. at p. 138.)

**4** The majority also notes that debtors generally have a right to postsale redemption. (Maj. opn. at p. 9, *ante*.) However, I am aware of no case holding that a codebtor with no interest in the real property security is entitled to postsale redemption. (Cf. Civ. Code 2903 ["Every person, *having an interest in property subject to a lien*, has a right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed …." (Italics added)].)

This type of remedy affords the nonconsenting debtor with fair value protection without penalizing creditors acting in good faith.  In the present case, for example, there is no evidence the bank purposely failed to apprise appellants of the proposed sale of the Shafter property.  The bank may have reasonably assumed that it only needed Sally's consent to proceed with the short sale.  (See maj. opn. at p. 19, *ante*.)  The bank was likely unaware of the "unusual wrinkle" that Sally was not appointed as the representative of her husband's estate.  (*Ibid.*)  Thus, the bank has lost its right to seek a deficiency judgment despite no showing of bad faith.[5]

I urge the Legislature and Supreme Court to consider whether alternate remedies should be available when a *Hibernia* violation causes only hypothetical prejudice that can be cured by a lesser sanction.

For these reasons, I concur in the judgment.

_____
POOCHIGIAN, ACTING P.J.

---

[5] The majority assures us that bankers and their lawyers have had little trouble applying the rule of law that the consent of all debtors must be obtained.  (Maj. opn. at p. 9.)  It should be noted that not all creditors subject to section 726 are large lending institutions.  It is not hard to imagine an unsophisticated individual creditor mistakenly failing to obtain consent of a deceased debtor's heir.  Even if that honest mistake caused no tangible prejudice to the heir, the right to a deficiency judgment would be completely lost.

The range of available remedies should be broadened so that considerations of prejudice and bad faith can mitigate the harshness of the one-size-fits-all rule affirmed today.